UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS T. SMITH, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) JURY DEMANDED |
| COLLECTION PROFESSIONALS, INC., | ) |
| ROBERT B. STEELE, and APLINGTON, | ) |
| KAUFMAN, McCLINTOCK, STEELE | ) |
| & BARRY, LTD., | ) |
| | ) |
| DEFENDANTS. | ) |

## COMPLAINT

Plaintiff, Douglas T. Smith, brings this complaint to secure redress from unlawful credit and collection practices engaged in by Defendants Collection Professionals, Inc., Robert B. Steele, and Aplington, Kaufman, McClintock, Steele, and Barry, Ltd. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") and Collection Agency Act, 225 ILCS 425/1 *et seq*., as well as for wrongful garnishment.

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 42 U.S.C. 1983, and 28 U.S.C. §§ 1331, 1337, and 1367, as Defendants do business in the State of Illinois and because a material portion of the events at issue occurred in this District.

2. Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendants' collection demands were received here, a material portion of the events at issue occurred in this District, and Defendants reside and transact business here.

1

**PARTIES**

3. Plaintiff, Douglas T. Smith ("Plaintiff"), is an individual and resident of LaSalle County, Illinois, and a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4. At all times relevant hereto, Plaintiff resided at 1708 ½ Fourth St., Peru, Illinois 61354.

5. Defendant, Collection Professionals, Inc., ("CP") is at times an assignee for collection of defaulted debts, that regularly collects defaulted consumer debts by mail, telephone and via filing lawsuits, on behalf of itself and others, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

6. CP's principal business purpose is the collection of defaulted consumer debt through the mails and interstate commerce, such as credit reporting, as well as via litigation, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

7. CP regularly collects defaulted and/or delinquent medical debts on behalf of others, including via "litigation by assignment", where according to CP "Illinois Statutes allow legal action to be filed in the name of Collection Professionals, Inc., rather than in the name of the client. We are able to group all of the accounts on an individual debtor, into one course of action enabling us to collect many small balance accounts. Collection Professionals, Inc. provides the attorney and advances all court costs. Clients have no additional expenses and our services are provided based on the previously

mentioned contingency fee." See Website, https://www.collprofinc.com/, Accessed on March 10, 2024.

8. CP collected or sought to collect over 1,000 defaulted and/or delinquent medical debts in the year 2023, on behalf of its clients.

9. CP maintains a collection agency license from the State of Illinois.

10. CP maintains a website, https://www.collprofinc.com/.

11. CP's website states in part as follows:

**REGULAR COLLECTION SERVICES:**

📁 Category: Featured Services

All employees making debtor contacts are recognized Certified Collectors by the American Collector Association or are working toward that end. The individual attention given to each debtor contact, and the extra effort we devote, have enabled us to more than double our industry's average recovery ratio - year after year. We provide this service on a contingency fee basis - no collection - no charge.

See Website, https://www.collprofinc.com/featured-services/regular-collection, Accessed on March 10, 2024

12. Robert B. Steele ("Steele") is an attorney licensed in the State of Illinois.

13. Steele regularly collects defaulted consumer debts by mail, telephone and via filing lawsuits, on behalf of himself and others, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

14. Steele regularly directs consumers, from which he seeks to collect debts, to write checks out to him personally, specifically to "Robert B. Steele, P.O. Box 517, LaSalle, Illinois, 61301", though he is a principal of Aplington, Kaufman, McClintock, Steele, and Barry, Ltd.

15. Steele regularly represents creditors and/or assignees of bad debts, such as CP, in connection with the collection of defaulted consumer debts from consumers.

16. Aplington, Kaufman, McClintock, Steele, and Barry, Ltd. ("Aplington") is engaged in the business of a law firm, using the mails, courts and telephone to collect defaulted consumer debts originally owed to others.

17. Aplington regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a debt collector as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

18. In the year 2023, Aplington filed over 200 lawsuits on behalf of CP to collect defaulted and/or delinquent consumer debts.

## STANDING

19. Plaintiff has Article III standing because, *inter alia*, Defendants Steele, CP and Aplington failed to provide Plaintiff with required information about the creditors to which the alleged debt is purported to be owed, the amount of the alleged debt, and his right to contest or request verification of the debt/ascertain the identity of the original creditor, placing him at a distinct disadvantage in dealing with his alleged obligations. If he had known about his rights, he would have timely disputed and sought verification of the debts—thereby requiring CP, Steele, and Aplington to cease litigating the collection

action they filed against him and obtain verification. *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019).

20. Plaintiff has Article III standing for the further reason that a *business* account with which he is associated was illegally garnished by Defendants in an attempt to collect the alleged *consumer* debt from him, causing him to lose access to money he otherwise would have available, and disrupting his ability to do his job and run his busienss. Defendants had neither a legal right nor a factual basis to cause his business account to be garnished. Defendants' false allegations caused Plaintiff severe emotional distress, loss of time, and financial loss and thus a concrete injury, necessitating that Plaintiff pay money to an attorney and to the State Action court to defend the false claim, and preventing Plaintiff from paying debts and making purchases in connection with his business.

## FACTS RELATING TO ALL COUNTS

21. Plaintiff was alleged by CP, Steele and Aplington to incur various medical debts, for non-elective health care.

22. The obligations were thereafter declared to be in default.

23. Plaintiff thus incurred an alleged obligation ("alleged debt") as that term is understood under § 1692a (5).

24. The alleged debt was not incurred in connection with Plaintiff's employment, nor in connection with any business matter.

25. The alleged debt stems from assignments made from various creditors to CP, for medical care asserted by CP to be given to Plaintiff.

5

26. CP alleges to have been assigned the alleged debt via the execution of an assignment for collection.

27. CP thereafter hired Steele and Aplington to collect the alleged debt from the Plaintiff, by filing an action in LaSalle County, Illinois.

28. Specifically, on May 31, 2022 Steele and/or Aplington, on behalf of CP, filed a lawsuit against Plaintiff titled *Collection Professionals, Inc. v. Doughlas T. Smith,* Case No. 2022SC430, in the Circuit Court of The Thirteenth Judicial Circuit, LaSalle County, Illinois ("State Action").

29. On October 11, 2022, judgment was entered against Plaintiff in the State Action.

30. On or around March 17, 2023, Aplington and/or Steele, on behalf of CP, filed a "Citation to Discover Assets to Debtor's Bank", and served a copy on Plaintiff.

31. Specifically, the bank to which the Citation was directed was "Peru Federal Savings Bank".

32. Plaintiff did not have a personal bank account at Peru Federal Savings Bank, however,

33. Rather, he had a small business checking account with Peru Federal Savings Bank for his business, "Dougies Barber Shop".

34. Plaintiff is the manager of "Dougies Barber Shop, LLC".

35. Defendants at all times were aware that Plaintiff did not have an account at Peru Federal Savings Bank that they could legally garnish, but they filed and served a Citation to garnish said business account anyway.

6

36. As a result, on or around March 17, 2023, $1,033.26 was withheld from said business account and frozen so that Plaintiff could not access said account for his business purposes.

37. Plaintiff thereafter expended time and money and retained an attorney, to which he became indebted, in order to attempt to quash the Citation.

38. On or around March 22, 2023, Aplington and Steele, on behalf of CP, mailed a copy of the Citation to Plaintiff.

39. The March 22, 2023 mailing was the first written communication to Plaintiff made by Defendants Steele and Aplington in connection with the collection of the alleged debt.

40. Plaintiff received the Citation on or around March 25, 2023.

41. On or around April 10, 2023, Plaintiff's counsel sent an email to Steele regarding the unlawful garnishment.

42. On April 10, 2023, Defendant Steele sent an email to Plaintiff's counsel, communicating that Defendants will release the garnished account.

43. Due to Plaintiff's counsel's actions and intervention, Defendants agreed to release the account the account was released on or after April 13, 2023.

44. Aplington's mailing of the Citation on or around March 22, 2023 was the initial communication by Aplington and Steele with Plaintiff sent in connection with the collection of the alleged debt.

45. Steele's email to Plaintiff's counsel on April 10, 2023 was Steele's first communication made to Plaintiff or his attorney in connection with the collection of the alleged debt.

7

46. Plaintiff did not have access to his business account for about a month, causing him substantial hardship in his ability to run his business and make money, including impeding his ability to pay his business bills and buy supplies.

47. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (2) The false representation of—**
>
> **(A) the character, amount, or legal status of any debt; or…**
>
> **(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

48. The Citation mailed to Plaintiff contained false information, specifically that Defendants sent the Citation to the bank and to the debtor because "the creditor believes that the bank has property belonging to the debtor….", as Defendants at all times knew and believed that Plaintiff did not have an account at Peru Federal Savings Bank that could be garnished, violating the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

8

49. Defendants charged Plaintiff money in connection with the garnishment that they illegally pursued, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10) of the FDCPA.

50. 15 U.S.C. § 1692f of the FDCPA provides in part as follows:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **(1)The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**
>
> **…**

51. Defendants used unfair and unconscionable mean to try to collect the alleged debt by seeking to collect it from Plaintiff's business account, and by charging and seeking to collect a fee in connection with said illegal garnishment, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

52. 15 U.S.C. § 1692g of the FDCPA provides in part as follows:

> **(a) Notice of debt; contents**
>
> **Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**
>
> **(1) the amount of the debt;**
> **(2) the name of the creditor to whom the debt is owed;**
> **(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
> **(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of**

9

> **such verification or judgment will be mailed to the consumer by the debt collector; and**
> **(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**
>
> **(b) Disputed debts**
>
> **If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

53. The Fair Debt Collection Practices Act thus requires a debt collector to give a written notice to a consumer within five days of its initial communication with said consumer, or his attorney. 15 U.S.C. § 1692g(a). That notice must include, among other things, a description of two mechanisms that the debtor can use to verify his debt. First, a consumer can notify the debt collector "in writing" that she disputes all or part of the debt, which obligates the debt collector to obtain verification of the debt and mail a copy to the debtor. Id. § 1692g(a)(4). A failure to dispute the debt within 30 days means that the debt collector will assume that the debt is valid. Id. § 1692g(a)(3).

54. A consumer can also make a "written request" that the debt collector provide him with the name and address of the original creditor, which the debt collector must do if a different creditor currently holds the debt. Id. § 1692g(a)(5).

55. A debt collector must cease collection of a debt, by litigation or otherwise, if a consumer disputes a debt in writing within 30 days of the date he receives a Notice of Debt, until or unless the collector mails verification of the debt to the consumer. § 1692g(b).

56. The email dated April 10, 2023 was the initial communication made by Steele to Plaintiff, via Plaintiff's counsel, regarding the collection of the alleged debt.

57. The Citation sent by Defendants on or around March 22, 2023 was the initial communication made by Steele and Aplington to Plaintiff, that was made in connection with the collection of the alleged debt.

58. Defendants Aplington and Steele were required to send Plaintiff a Notice of Debt within five days of the initial communication with Plaintiff that was made in connection with the collection of the alleged debt.

59. Defendants Aplington and Steele failed to provide Plaintiff or his attorney with required information regarding his alleged debt within five days of their initial communication with him—a "Notice of Debt" under section 1692g of the FDCPA—which would have informed Plaintiff of the amount of debt sought, his rights as to disputing the alleged debt, and the name of the alleged creditors to which he owed money.

60. Plaintiff experienced a concrete injury as a result of the Notice of Debt not being provided to him by Steele and/or Aplington as Plaintiff would have exercised his

11

right to request the identity of the original creditors and dispute the alleged debt in writing within 30 days of his receipt of a Notice of Debt by Steele and/or Aplington, which would have halted the State Action collection suit and the collection of the alleged debt via garnishment.

61. Defendants' failure to provide Plaintiff a Notice of Debt thus impaired his ability to use the information, that was required to be contained therein, for a substantive purpose that the statute envisioned.

62. Defendants' failure to provide information negatively affected Plaintiff's handling of his debts as he is to this date uncertain of the amounts which Defendants are seeking to collect from him, the identity of the alleged creditors who assigned the alleged debt, and the basis for and origin of the alleged debts.

63. An unsophisticated consumer would be unable to ascertain the origin and amount of his debts, and she would have his legal right to obtain verification of the alleged debt and/or dispute the same taken away, as a result of Steele and/or Aplington's failure to provide a Notice of Debt within five days of the initial communication with him, regarding an alleged debt.

64. Plaintiff has suffered a concrete injury as a result of Defendants' actions, as he was unable to access money that he needed to run his business, and he was also stripped of his ability to dispute the alleged debt in writing and thus halt the collection of the alleged debt.

65. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

12

66. CP bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Aplington and Steele, and is liable for the actions taken to collect a debt on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016).

**COUNT I-FAIR DEBT COLLECTION PRACTICES ACT-ALL DEFENDANTS**

67. Plaintiff realleges and incorporates paragraphs 1-66 into this count.

68. Defendants acted as debt collectors, as defined by the FDCPA, with respect to Plaintiff, as they each attempted to collect a defaulted consumer debt via their respective actions, specifically described *supra*.

69. Defendants violated the FDCPA, 15 U.S.C. §§ 1692e, 1692f, and 1692g in connection with their attempts to collect the alleged debt from Plaintiff, as described above.

70. Plaintiff lost time and money as a result of Defendants' illegal collection actions.

71. At all times herein mentioned, Defendants are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

72. Each of the Defendants had actual and/or constructive knowledge of the acts of the other Defendants as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts.

## COUNT II—ILLINOIS COLLECTION AGENCY ACT—CP

73. Plaintiff realleges and incorporates paragraphs 1-72 into this Count.

74. CP is a "debt collector" as that term is defined by the Illinois Collection Agency Act ("ICAA"), as well as a "collection agency" and "debt buyer".

75. Plaintiff is a consumer from which CP sought to collect an alleged delinquent consumer debt.

76. Defendant CP attempted to enforce a right or remedy with knowledge or reason to know that the right or remedy doesn't exist, in violation of 225 ILCS 425/9(a)(24) of the Illinois Collection Agency Act, when it sought to collect money from Plaintiff without having a legal right to garnish the account at issue, as described above.

77. Plaintiff was damaged by CP's illegal actions by having to expend time and money to defend against a false and illegal garnishment, and was without access and use of funds he needed to run his business, and he suffered extreme emotional distress as well a result of the actions of Defendants.

## COUNT III—WRONGFUL GARNISHMENT—ALL DEFENDANTS

78. Plaintiff realleges and incorporates paragraphs 1-72 into this Count.

79. Defendants caused Plaintiff's business account to be garnished, specifically the account associated with "Dougies Barber Shop, LLC", held at Peru Federal Savings Bank, by filing and serving a "Citation to Discover Assets to Debtor's Bank".

80. No Defendant had a right to garnish said account.

81. Each Defendant knew that they did not have a right to garnish said account prior to seeking garnishment.

82. Plaintiff was damaged by Defendants' actions.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff, and against Defendants, as follows:

a) Statutory damages and actual damages for Plaintiff pursuant to 15 U.S.C. § 1692k;

b) Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

c) Actual and Punitive damages under the ICAA and for wrongful garnishment;

d) Such other or further relief as the Court deems proper.

Respectfully submitted,

By: */s/ Mario Kris Kasalo*
Mario Kris Kasalo
Attorney for Plaintiff
**The Law Office of M. Kris Kasalo, Ltd.**
4950 Madison St., P.O. Box 1425
Skokie, IL 60077
tel 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo

## JURY DEMAND

Plaintiff demands trial by jury.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo